

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 2 5 2000

Michael N. Milby
Clerk of Court

ROSA ITUARTE DE RUIZ, Individually    :
and as Beneficial Owner of PARKWAY    :
SALES & SERVICES LTD.    :
   :
        Plaintiff    :
   :
VS.    :
   :
CHASE MANHATTAN CORPORATION,    :
CHASE MANHATTAN PRIVATE BANK,    :
YESID CORTES and TERESA PRADO    :
PALCZYNSKI:   
        Defendants    :

**CIVIL ACTION NO. B-99-193**

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, ROSA ITUARTE DE RUIZ, Individually and as Beneficial Owner of

PARKWAY SALES & SERVICES LTD., Plaintiff, complaining of, CHASE MANHATTAN

CORPORATION, CHASE MANHATTAN PRIVATE BANK, YESID CORTES and TERESA

PRADO PALCZYNSKI, and for causes of action would show the court as follows:

I.

A. Plaintiffs, ROSA ITUARTE DE RUIZ, Individually and as Beneficial Owner of

PARKWAY SALES & SERVICES LTD, is a citizen of Mexico who also maintains a residence in

Texas. At the time that she started her business relationship with the defendants, plaintiff also had

a residence in Brownsville, Cameron County, Texas, where she and her husband conducted business

Page 1

in the state. ROSA ITUARTE DE RUIZ, Individually and as Beneficial Owner of PARKWAY SALES & SERVICES LTD currently has a residence at 23 Sheringham, Oakville Farms San Antonio, Bexar County, Texas and does business in the state of Texas individually and did business as PARKWAY SALES & SERVICES LTD as an "off shore" entity formed by the defendants of which the plaintiff was the beneficial owner.

B. Defendant, CHASE MANHATTAN CORPORATION, in a corporation incorporated under the laws of Delaware doing business in Texas and has been served with process and has filed an answer herein.

C. Defendant, CHASE MANHATTAN PRIVATE BANK, is a wholly owned subsidiary company of the defendant CHASE MANHATTAN CORPORATION, is also doing business in the state of Texas and has also been served and filed an answer.

D. Defendant, YESID CORTES, is an individual who is or was employed by the defendants and resides in Miami, Florida. He likewise has been served and filed an answer.

E. Defendant, TERESA PRADO PALCZYNSKI, is an individual who is employed by the defendant CHASE MANHATTAN CORPORATION. She likewise has been served and filed an answer.

2.

### (DEFENDANTS)

A. Defendant CHASE MANHATTAN CORPORATION and CHASE MANHATTAN PRIVATE BANK (hereinafter referred to collectively as CHASE) is a financial service company that provide a variety of private banking and financial services to its customers on a world wide basis. It is able to do this through its related corporations and companies, such as the defendant CHASE

MANHATTAN PRIVATE BANK a wholly owned subsidiary of CHASE and other foreign entities entirely under its control.  In this regard, CHASE  holds itself out to the investing public as an institution that has special skill, knowledge and experience in the safe managing and investing of money for its customers.  Defendants also claim to specialize in servicing so called, private banking accounts, for wealthy foreign investors by offering a variety of investment products not available to United States investors.  In this regard CHASE offers a variety of securities sold on the New York stock exchange as well as some not registered with the Securities Exchange Commission.  At all time mentioned herein, the defendants acted in concert with one another and in the furtherance of the business of CHASE.  Furthermore, the defendants in concert with one another, solicited, offered and sold securities as that term is used in the Securities Act of 1933, 15 U.S.C. § 77 et. seq. and the Securities Act of 1934, 15 U.S.C. §78 et. seq., to the plaintiff in Brownsville, Texas, Houston, Texas and San Antonio, Texas.

3.

### (Factual Background)

A. Plaintiff, ROSA ITUARTE DE RUIZ is the widow of Manuel Ruiz Diaz.  Manuel Ruiz Diaz maintained a residence and did business with CHASE in Brownsville, Texas.  In the mid 1980's he and his brother Adolfo Ruiz Diaz were solicited by management of the local Chase Bank branch where they banked, to invest with the defendant, Chase Manhattan Private Bank.  In this regard, they opened an account with the Chase Manhattan Private Bank in Houston, Texas.  For several years after that, Manuel Ruiz Diaz and his brother continued to do business with the defendant CHASE and Chase Manhattan Private Bank in Brownsville, Texas and Houston, Texas.  CHASE would recommend and sell securities as well as other investments to Manuel Ruiz Diaz.

B. In 1989, Manuel Ruiz Diaz died in Brownsville, Texas. The plaintiff, as the widow and heir of Manuel Ruiz Diaz was the successor of his interest. She and her brother-in-law continued to do business with CHASE and Chase Manhattan Private Bank in Brownsville, Texas and Houston, Texas as had been the custom before. Plaintiff continued to receive her account statements at her home in Brownsville, Texas. During this period of time the defendant YESID CORTES was her financial advisor. The plaintiff has been a housewife most of her life and is not a sophisticated investor. Prior to her husband's death in 1989, he made all of the investment decisions, most of which were in the form of certificates of deposit or others that might have been recommended by CHASE. After her husband's death, she advised CHASE and Chase Manhattan Private Bank that she was relying on the income from her investment account as her means of support and wanted her investment strategy to be the preservation of capital. She was also assured by CHASE and YESID CORTES that they would continue to invest her money in secure investments.

C. In 1993 the plaintiff decided to partition her accounts from those of her brother-in-law, Adolfo Ruiz Diaz, and made arrangements with CHASE to do so.     After the partition of the accounts in 1993, plaintiff again advised CHASE, its employees and agents, that she wanted her capital preserved and her investment account secured, consistent with her age and financial needs. Plaintiff made it clear to the defendants that the reason she was investing her money in the United States was for reasons of stability and security. On or about this date in 1993, the plaintiff had in excess of $4,000,000 invested with CHASE . She relied upon the agents and employees of CHASE, such as YESID CORTES  to give her prudent and sound investment advise and to safeguard her investment accounts inherited from her husband, which were her only means of support.

D. At or about this same time in 1993, the plaintiff was informed that her account executive,

defendant, YESID CORTES, would be transferred from Houston, Texas to Miami, Florida. Since most of there business was done over the telephone in Mexico or Brownsville, Texas, the plaintiff chose to keep her account with the defendants. The defendant CORTES was then moved by defendants, CHASE from Texas to Florida. Shortly after this occurred, the defendant CORTES was given discretion to make investments in the plaintiff's account in accordance with her investment objectives.

E. Almost immediately after the transfer by CHASE of the defendant YESID CORTES, he recommended that the plaintiff form "off shore" companies for purposes of investing her money. The plaintiff, not understanding the significance of this move, was assured that at all times she would be the beneficial owner of the companies formed and could change the form of doing business at any time. However, the method and manner of forming these companies was selected by the defendants CHASE and CORTES, and all decisions regarding the name and operation of said "off shore" companies was done at the direction of the defendants their agents or employees. One such company formed and operated by the defendants was called Bennington Holdings Ltd. All of the plaintiff's holdings in her account with CHASE were transferred to the name of Bennington Holdings Ltd. Between May of 1993 to February of 1995 under the management of the defendants and its related entities, Bennington Holdings Ltd. suffered trading losses in its account of $218,771, fees of $83,316 and a total out of pocket loss to the plaintiff of $26,958.

F. Also in 1993, the defendants advised the plaintiff that she should form another "off shore" company. Not understanding the reasons for doing so, the plaintiff relied on the advise of the defendants and allowed the defendants to form another new company that the defendants named Parkway Sales & Services Ltd. In 1995 the defendants transferred all of the plaintiffs assets from

Bennington Holdings Ltd. to Parkway Sales & Services Ltd.  During this period of time, the defendants sent the plaintiff statements reflecting her account to either her residence in Brownsville, Texas and then to San Antonio, Texas.

G.  Between May of 1995 to December 1998 the defendants managed the plaintiff's investment account through Parkway Sales & Services Ltd.  Over this period of time the plaintiff relied upon the experience and advise of the defendants to make reasonable, prudent and conservative investments in the plaintiff's account, consistent with her advanced age and her investment goals.  In late 1996 the plaintiff was contacted by the defendants CORTES and CHASE and was advised that one of the investments purchased  by the defendants for her account in the amount of $1,350,000 was in default.  The investment was a bond recommended to the plaintiff by CHASE and CORTES.  Previously, the defendants had made material representations as to the quality of the security that it purchased for the plaintiff's account.  The defendants had represented the security to be safe, secure and in compliance with plaintiff's desire for the preservation of capital.

H.  For some period of time, the plaintiff was told by the defendants that the loss to her account would be recovered.  However, sometime in 1997, an employee or agent called the plaintiff in San Antonio, Texas and spoke with her son about the security that had been purchased for her account.  This person attempted to get the plaintiff to accept the loss and agree to a settlement with the defaulting company.  The plaintiff and her son refused to accept a settlement.  Without the consent of the plaintiff the defendants accepted a settlement with the defaulting company in December 1997 and advised the plaintiff that the security had lost one half of its value, or $675,000.  The defendants then substituted a security known as a *12% Grupo Synkro bond* in the plaintiffs portfolio in December 1997.  Although the plaintiff questioned the actions of the defendants, the

Page 6

defendants and in particular, the defendant Teresa Prado Palczynski continued to make representations that the plaintiff's investment account would recover. Telephone calls were received by the plaintiff and her son in Mexico and at her home in San Antonio, Texas in 1997 and 1998. In monthly account statements received by the plaintiff in San Antonio, Texas between January 1998 to December 1998 the defendants continued to represent that the security which had been substituted by the defendants had a fair market value of $675,000.

I. In 1999 the plaintiff decided to close her account with the defendants. In the process of closing her account the defendants sent documents to the plaintiff insisting that before she could close her account she was required to sign those documents which among other things, required that the plaintiff "...*hold the defendants harmless for any and all liabilities losses damages claims costs and expenses*" for the handling of the plaintiffs account by the defendants. The plaintiff refused to sign this document. After the plaintiff transferred most of her account to another financial consultant in Austin, Texas, she learned that her account statements did not accurately and truly reflect the value of her investments with the defendants. In particular, the plaintiff learned that the security that the defendants purchased for her account from Grupo Synkro and had represented as having a value of $750,000 was in fact worthless.

J. Even after the plaintiff had transferred her assets from the defendants to another financial consultant, the defendants continued to insist that she execute certain documents to close her account. The defendant, Teresa Prado Palczynski between December 1998 through June 1999 sent the plaintiff documents to her home in San Antonio, Texas and via fax to Mexico, purporting to "...*hold the defendants harmless for any and all liabilities losses damages claims costs and expenses,*" in the management of the plaintiff's account. Between May of 1995 to December 1998 the

Page 7

plaintiff's account in the name of Parkway Sales & Services Ltd., under the management of the defendants, suffered trading losses of $1,908,875, fees of $71,436 and a total out of pocket loss in her account of $1,409,033.

4.

**(Causes of Action)**

A. **Breach of Contract**      Plaintiff and defendants entered into one or more written agreements over the course of their dealings between mid 1980 to 1998 governing the management of the plaintiff's investments. Defendants breached the contract with the plaintiff to manage her account in accordance with that agreement to invest in a prudent and conservative manner. Furthermore, because the defendants exercised discretion in the investment of the plaintiffs assets, they were required to use more than ordinary care in the management of the plaintiff's account Because of the actions of the defendants, they should be jointly and severally liable to the Plaintiff. The defendants made investments that were not suitable for the account of the plaintiff and which were not in line with her investment instructions.

B. **Breach of Fiduciary Duty** The defendants owed a contractual and fiduciary duty to the Plaintiff as a customer of these Defendants to exercise care and due diligence in dealing with the Plaintiff's assets. This duty included the obligation to make full disclosure to Plaintiff, including disclosure of any conflicts of interests among the parties and disclosure of any actions which were contrary to the plaintiff's investment goals or contrary to Plaintiffs' best interests. In this regard, the defendants failed to keep the plaintiff properly informed of the defendants investment decisions regarding the plaintiff's account and hid from the plaintiff, the true nature of her losses.

Furthermore, defendants purchased for the plaintiff's account securities that are not permitted

Page 8

to be sold to United States accounts and solicited the same in the United States and Mexico in violation of state and Mexican laws. They did so by forming "off shore" companies for the plaintiff, thus permitting the defendants to offer and buy securities for the plaintiff's account that it could not offer to other investors. Defendants further encouraged the plaintiff to form these companies in order to charge higher fees and trade in the account with more frequency again in an attempt to produce higher commissions to the defendants.

Plaintiff further contends, that the defendants had a conflict of interest in recommending in particular the Grupo Synkro security by failing to disclose to the plaintiff that the defendants were creditors of Grupo Synkro at the time that they put 50% of the plaintiff's investments into that one security. Alternatively, the defendants made false and misleading statement or failed to disclose material information to the plaintiff in order to convince her to purchase said security. The defendants also breached their fiduciary duty by providing false and misleading account statements to the plaintiff for the purposes of hiding the true nature of the plaintiff's losses.

C. **Fraud** Defendants owed a statutory, contractual and fiduciary duty to the Plaintiff. The conduct of the defendants was done maliciously, intentionally and willfully with the intent to cause the plaintiff substantial injury and in contravention to the plaintiffs investment goals. Furthermore, the conduct of the defendants in providing false and misleading account statements and attempting to secure execution by the plaintiff of a release by false and misleading representations is fraud. Because of the actions of defendants they should be jointly and severally liable to the Plaintiff.

D. **Violations of the Federal Securities Acts of 1933 and 1934 and the Texas Security Act.** Plaintiff incorporates the factual allegations contained above in 3A,B and C. The actions taken by the defendants constitute violations of the Federal Securities Acts of 1933, 1934 and the Texas

Securities Act. Furthermore, the defendants acted in concert and aided and abetted one another to mislead the plaintiff about he extent of her losses in her accounts. Defendants should therefore be jointly and severally liable to the plaintiff for the damages prayed for below.

5.

**(Damages)**

Plaintiff incurred out of pocket losses in her account under the management of the defendants between 1995 to 1998 in the amount of $1,409,033.71. This loss occurred during one of the longest bull markets in the history of the world. Even under the most conservative of investment strategies, the plaintiff would have increased her assets by $2,500,000. Therefore, the plaintiff has incurred actual damaged in the sum of $4,000,000.00, plus accrued interest, and attorney's fees.

Plaintiff is further entitled to punitive damages for the fraud of the defendants as alleged above as allowed by the Texas Civil Practice and Remedies Code, the Texas Securities Act and for damages under the Federal Securities Acts of 1933 and 1934.

Plaintiffs are also entitled to reasonable attorney's fees and costs of court.

WHEREFORE, Plaintiff ROSA ITUARTE DE RUIZ, INDIVIDUALLY and as Beneficial Owner of PARKWAY SALES & SERVICES LTD request that Defendants, CHASE MANHATTAN CORPORATION, CHASE MANHATTAN PRIVATE BANK, YESID CORTES and TERESA PRADO PALCZYNSKI, be cited to appear and answer and that on final hearing Plaintiff have judgment against Defendants for an amount as plead above, together with interest at the lawful rate, attorney's fees and for such other and further relief, at law or in equity to which Plaintiffs are justly entitled.

Respectfully submitted,

Horacio L. Barrera
I.D. Bar# 2801
S.B.O.T. 01805800
1201 E. Van Buren Street
Brownsville, Texas 78520
Tel:(956) 546-7159
Fax: (956) 544-0601

Richard G. Morales, Jr.
PERSON,    WHITWORTH,    RAMOS,
BORCHERS & MORALES, L.L.P.
S.B.O.T. # 14419000
P.O. Box 6668, 602 E. Colton
Laredo, Texas 78042-6668
Tel: (956)727-4441
Fax: (956)727-2696

Page 11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff's First Amended Complaint was served upon all counsel of record to-wit:

Mr Norton A. Colvin, Jr.
Rodriguez, Colvin & Chaney
1201 E. Van Buren Street
Brownsville, Texas 78520

by via hand delivery, pursuant to the Federal Rules of Civil Procedure, on this the 25th day of January, 2000.

Horacio L. Barrera